Robert T. Bell
Lance P. Jasper
REEP, BELL & JASPER, P.C.
P.O. Box 16960
Missoula, Montana 59808-6960
Telephone:  (406) 541-4100
Facsimile:  (406) 541-4101
Email:        bell@westernmontanalaw.com
                 jasper@westernmontanalaw.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISON

| | | |
|---|---|---|
| DONALD T. RODIE AND SUSAN E. LONDON, | ) ) ) | Cause No.: |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | COMPLAINT AND DEMAND FOR JURY TRIAL |
| THE CINCINNATI INSURANCE COMPANY AND USAA CASUALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

COME NOW Plaintiffs Donald Rodie and Susan London, by and through

their counsel of record, and for their Complaint against The Cincinnati Insurance

Company and USAA Casualty Insurance Company, state and allege as follows:

## PARTIES

1.     Plaintiff Donald T. Rodie ("Don") is a natural person and an individual resident citizen of the State of Montana, residing in Whitefish, Montana.

2.     Plaintiff Susan E. London ("Susan") is a natural person and an individual resident citizen of the State of Montana, residing in Whitefish, Montana.

3.     Defendant The Cincinnati Insurance Company ("Cincinnati") is an insurance company authorized to do business in the State of Montana. Upon information and belief, it is incorporated and organized under the laws of the State of Ohio, having its principal place of business in Fairfield, Ohio.

4.     Defendant USAA Casualty Insurance Company ("USAA") is an insurance company authorized to do business in the State of Montana. Upon information and belief, it is incorporated and organized under the laws of the State of Texas, having its principal place of business in San Antonio, Texas.

## JURISDICTION and VENUE

5.     The jurisdiction of this Court is premised upon 28 USC § 1332, as there is complete diversity of citizenship between Plaintiffs and the Defendants in this action and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     Venue is proper in this Court is properly premised upon 28 USC § 1391(b)(2).

# **BACKGROUND**

A. <u>The Wreck.</u>

1.      Don and Susan were severely injured in an automobile wreck on Montana Highway 40 near Whitefish, Montana on March 7, 2022 (the "Wreck"). They were not at fault for he Wreck in any way. Don and Susan were on their way to be dropped at the Glacier International Airport and were passengers in a vehicle driven by their friend, Thor Empey. Anne Govenettio ("Govenettio") was driving her Toyota pickup truck from the opposite direction, under the influence of drugs.

2.      Govenettio rear-ended a full-size Chevrolet Silverado pickup truck that was stopped and waiting to turn left from Highway 40 onto Sandy Hill Lane. This collision took place at highway speeds and shoved the full-size pickup truck into its opposite lane, right in front of Mr. Empey's vehicle, in which Don and Susan were passengers. Their vehicle smashed head on into the pickup truck, and was crushed so severely it became nearly unrecognizable.

3.      Don and Susan were severely injured. Each was hospitalized. Each underwent multiple surgical procedures. Each lost time from work. Neither has fully recovered from their injuries. Both suffer from permanent physical conditions as a result of the Wreck. They also have physical disfigurements caused by the Wreck and resulting surgeries.

4.      In reflection of the seriousness of their injuries and subsequent medical treatment, Don and Susan have been collectively billed over $150,000 for their medical expenses, and additional bills continue to arrive.

5.      Govenettio was insured by an automobile liability policy from Allstate, with bodily injury limits of $50,000/accident. Her insurer, Allstate, interplead those funds into court. Logan Health, which provided medical care to Don and Susan, is asserting a right to lien reimbursement in the amount of $35,682.19 of the interplead funds. Because of this lien, and because Mr. Empey and the occupants of the full-size pickup were also injured in the Wreck, the Govenettio Allstate liability policy limits are woefully inadequate to compensate all victims. To date, Don and Susan have not received any distribution from the interplead funds. Even if they do, any such distribution will represent only a fraction of their overall damages.

B.  Cincinnati's Conduct.

6.      Don and Susan are policyholders of two automobile insurance policies issued by Cincinnati. The first policy, A03 0955769, provided a combined single per accident limit of underinsured motorist coverage of $500,000. The second policy, A01 0955769, likewise provided a combined single per accident limit of underinsured motorist coverage of $500,000. Two separate policies were issued, and separate premiums were paid under each policy.

7.    By email dated January 24, 2023, Cincinnati acknowledged the coverages are stackable and that a total of $1,000,000 of UIM coverage is available under these policies for Don's and Susan's damages in the subject Wreck. A true and correct copy of adjuster Melissa Walker's email on behalf of Cincinnati is attached as Ex. 1.

8.    By the same email, Cincinnati also acknowledged that additional underinsured motorist coverage existed for the benefit of Don and Susan under an umbrella policy they purchased, issued by Cincinnati, U01 0955769. The umbrella policy provided an additional $1,000,000 single limit underinsured motorist coverage.

9.    Thus, Don and Susan possessed an aggregate of $2,000,000 underinsured motorist coverage from Cincinnati applicable to the subject Wreck.

10.    Following Cincinnati's confirmation of these limits, Don's and Susan's counsel sent proof of loss correspondence to Ms. Walker on March 16, 2023. Their correspondence enclosed law enforcement investigative reports, photographs of the involved vehicles, a summary of medical expenses incurred prior to that date and extensive medical records for each client documenting their injuries from the collision, complications and treatment. A true and correct copy of the March 16, 2023 letter is attached as Ex. 2 ("Cincinnati Proof of Loss")(enclosures omitted for the sake of brevity). The Cincinnati Proof of Loss

letter also enclosed a video statement from Don and Susan describing the impact of the Wreck on their lives in their own words. The Cincinnati Proof of Loss letter concluded by requesting a tender of all available UIM coverage and offered to provide Cincinnati with a release if it did so.

11.    By email response dated March 29, 2023, Ms. Walker confirmed her receipt of the Cincinnati Proof of Loss letter and identified only one item of additional information she was seeking in order to evaluate the claim: A copy of the automobile insurance policy for Mr. Empey's vehicle. She represented she "[had] been trying to reach the adjuster at USAA as Cincinnati will need a copy of their policy for review." A true and correct copy of Ms. Walker's March 29, 2023 email is attached as Ex. 3.

12.    Don and Susan promptly responded to Ms. Walker's email through their counsel, supplying a copy of the USAA policy and correspondence from USAA. A true and correct copy of the April 3, 2023 email to Ms. Walker is attached as Ex. 4. (Enclosures omitted for the sake of brevity).

13.    On April 18, 2023, Don's and Susan's counsel emailed Ms. Walker, noting that he had not heard back from her in response to the Cincinnati Proof of Loss letter and asking that Ms. Walker call to discuss. A true and correct copy of the April 18, 2023 email is attached as Ex. 5.

14.    On April 21, 2023, Don's and Susan's counsel wrote to Ms. Walker noting that Cincinnati had gone "radio silent" and had not responded to the policy limits settlement offer included with the March 16, 2023 Proof of Loss letter. Noting that the time value of the funds was substantial (about $2,000/week), the letter requested immediate notification of Cincinnati's decision and indicated that the offer to release Cincinnati would be withdrawn if not accepted.  The letter noted that the demand for a tender of policy limits would remain in effect even if Cincinnati did not accept the offer to supply a release. A true and correct copy of the April 21, 2023 letter to Ms. Walker is attached as Ex. 6.

15.    On May 5th, 2023, Don's and Susan's counsel again wrote to Ms. Walker. As of this date, Cincinnati had not paid any underinsured motorist benefits whatsoever to Don or Susan. Cincinnati had not requested any additional information other than the USAA policy, which had been provided. The letter noted it had now been nearly two months since the Cincinnati Proof of Loss correspondence with no response. The letter concluded as follows: "Cincinnati has no justification for further delay. To be clear: We ask that you advance all sums you believe are owed to Susan and Don on or before the closing of May 12, 2023." A true and correct copy of the letter is attached as Ex. 7.

16.    By May 18th, 2023, over 60 days had passed since Don and Susanhad supplied proof of loss. Cincinnati had requested no further information from them

other than the USAA policy information, had paid no underinsured benefits and had ceased communicating. Consequently, Don's and Susan's counsel again wrote to Ms. Walker stating, "Since [Cincinnati] has advanced nothing, offered nothing, and communicated nothing, we assume Cincinnati takes the position the claims are valueless. . . . Please advise immediately if our assumption is incorrect." A true and correct copy of the May 18th, 2023 letter is attached as Ex. 8.

17.    On May 19th, Cincinnati finally responded. Ms. Walker wrote to Don's and Susan's counsel stating, "The Cincinnati Insurance Company is extending an offer to settle the Underinsured Motorist claim for Donald Rodie in the amount of $100,000. The Cincinnati Insurance Company is also extending an offer to settle the Underinsured Motorist claim for Susan London in the amount of $100,000." A true and correct copy of Ms. Walker's letter is attached as Ex. 9.

18.    On May 31st, 2023 Don's and Susan's counsel responded by asking Ms. Walker to explain what she meant by the term "settle" and what terms she would require in a release. The letter went on to request a detailed explanation of how each offer was calculated and reiterated the request that Cincinnati advance all sums it believed were owed. A true and correct copy of the May 31, 2023 letter is attached as Ex. 10.

19.    On June 1, 2023 Ms. Walker wrote back as follows:

…to address your request for calculation of damages, we have considered the medical expenses you submitted for each injured party of $52,163.24 for Mr. Rodie and $58,924.38 for Ms. London as well as reasonable non-economic damages associated with the injuries they suffered. With regard to set-offs, we considered the $24,500 Mr. Rodie and Ms. London each received from the tortfeasor's underlying bodily injury coverage as well as the available medical payments coverages under their Montana auto policy of $10,000 for each injured party. It should be noted we have agreed to a pro rata share based upon the policy languages for the UIM coverage between USAA and Cincinnati of 17% and 83% respectively and are making independent evaluation and offers to resolve our individual exposures.

I am unaware of a requirement to advance UIM amounts while we are discussing resolution of your clients claim.

A true and correct copy of Ms. Walker's June 1, 2023 letter is attached as Ex. 11.

20.     Ms. Walker's calculations grossly undervalued the damages suffered by Don and Susan, assumed without basis that Don and Susan had each received $24,500 from the tortfeasor's insurance policy, and wrongfully applied offsets.

21.     By July 6, 2023, nearly four (4) months after the Cincinnati Proof of Loss, Cincinnati still had paid no underinsured motorist benefits to Don or Susan. Nor had it responded to the question of what terms were attached to its "offer of settlement". Consequently, Don's and Susan's counsel again emailed Ms. Walker, stating it was "baffl[ing] as to why you continue to evade this question, but you definitely have not answered it. I cannot respond to the offer to settle until you inform me of the non-monetary terms." The letter also posed the question, "[W]hy hasn't Cincinnati Insurance already advanced the sums it believes it owes under

the UIM coverage?" A true and correct copy of the July 6, 2023 email to Ms. Walker is attached as Ex. 12.

22.     Ms. Walker responded later that day that the only term "is that our offer is inclusive of medical liens, if any." A true and correct copy of Ms. Walker's July 6, 2023 letter is attached as Ex. 13.

23.     On July 19th, Cincinnati finally made an advance to Don and Susan.. It advanced them $100,000 each, a sum which vastly undervalued their claims. In her accompanying correspondence dated July 19, 2023, she asserted "$100,000 each . . . represents a reasonable and fair value of their UIM claim based upon the information provided to date." A true and correct copy of the July 19, 2023 letter is attached as Ex. 14.

24.     Since that date, Cincinnati has neither advanced any additional underinsured motorist benefits nor requested any specific additional information. Don and Susan have continued to supply medical records and bills as they were received. On October 6, 2023, they renewed through counsel their "request that Cincinnati pay all UIM coverage it believes it owes to [Don and Susan]." A true and correct copy of the letter to Ms. Walker is attached as Ex. 15. Cincinnati has not responded.

C. <u>USAA's Conduct.</u>

25.     At the time of the subject Wreck, Don and Susan were riding as passengers in Thor Empey's vehicle.

26.     Thor Empey insured his vehicle pursuant to an automobile insurance policy issued by USAA. The policy number was 00612 97 45C 7101 3 (the "USAA Policy"). The USAA Policy provided underinsured motorist coverage ("UIM") for bodily injury with "each person" limits of $50,000 and "Per accident" limits of $100,000. Separate premiums had been charged for two different vehicles.  USAA's claims representative acknowledged to counsel for Don and Susan, and to counsel for Mr. Empey, that the coverages were stackable for a total per accident UIM coverage of $200,000.

27.     On February 2, 2023, Don's and Susan's counsel wrote to the USAA adjuster handling the Rodie/London underinsured motorist claim advising that Rodie, London and Empey were in agreement to allocate underinsured motorist coverage among them 1/3 apiece. A true and correct copy of the February 2, 2023 letter is attached as Ex. 16.

28.     On February 10, 2023, Don's and Susan's counsel responded to a request for medical records by USAA and supplied said records immediately.

29.     On February 16, 2023, USAA claims representative "Kelly" requested more time to respond, saying, "we are still pending the insurance for your clients to

determine primacy of the pro rata shares for UIM coverage." Kelly's statement was false in that USAA has already been supplied the insurance information. Kelly also falsely stated, "your clients are not insured's [sic] under [the USAA] policy . . .." In reality, Don and Susan were insureds under the USAA Policy as they were "person[s] occupying [Mr. Empey's] covered auto" pursuant to USAA Policy, Part C, Definitions, A. A true and correct copy of Kelly's email is attached as Ex. 17 (enclosures omitted for brevity).

30.    On March 1, 2023, "Kelly" emailed stating, "we have evaluated the supports provided" and indicated USAA believed there was a pro rata allocation by which "Cincinnati Insurance would owe 87% of UIM and USAA would owe 13%". A true and correct copy of Kelly's email is attached as Ex. 18.

31.    On March 13, 2023, Don's and Susan's counsel sent proof of loss correspondence to USAA enclosing law enforcement investigative reports, photographs of the involved vehicles, a summary of medical expenses incurred prior to that date and extensive medical records for each client documenting their injuries from the collision, complications and treatment. A true and correct copy of the March 13, 2023 letter is attached as Ex. 19 ("USAA Proof of Loss")(enclosures omitted for the sake of brevity). The USAA Proof of Loss letter also enclosed a video statement from Don and Susan describing the impact of the Wreck on their lives in their own words. The Proof of Loss letter concluded by requesting a tender

of all available UIM coverage and offered to provide USAA with a release if it did so.

32.     On March 16, 2023, a new adjuster, **"April"**, emailed claiming "we have not received a response to the February 16, 2023 correspondence requesting insurance information for Donald Rodie". The email went on to use this as a justification for a delay until April 15 to respond to the proposed settlement of claims. In fact, the information April claimed USAA had not received had actually been provided to USAA in January and Kelly had acknowledged receipt and to have "evaluated" the materials as noted in Ex. 18. A true and correct copy of April's March 16, 2023 email is attached as Ex. 20.

33.     On April 13, 2023, USAA claims representative April emailed Susan's counsel, offering $15,052 "in settlement" of her underinsured motorist claim. She stated, "We believe this offer represents fair value of the claims." A true and correct copy of the April 13, 2023 email is attached as Ex. 21. On the same date, April emailed a settlement offer for Don's case of $15,244.  A true and correct copy of that email is attached as Ex. 22.

34.     On April 14, 2023, Don's and Susan's counsel responded with correspondence declining the settlement offers due to their inadequacy, and requesting USAA promptly pay all sums it believed were owed under the policy

and provide an explanation of the benefits it was paying. A true and correct copy

of the letter to April is attached as Ex. 23.

35.    On April 21, 2023, USAA responded with correspondence stating,

"When a settlement is reached under the UIM claim, the funds will be sent." A true

and correct copy of the April 21, 2023 letter is attached as Ex. 24.

36.    Don's and Susan's counsel responded with an email on April 24, 2023

requesting that USAA specify the conditions that had to be met in order for USAA

to determine that a "settlement" had been reached. A true and correct copy of the

April 24, 2023 email is attached as Ex. 25.

37.    On April 27, 2023, a new adjuster responded on behalf of USAA,

"Stephanie". Stephanie nonsensically wrote that "a release is not required under

the UIM claim" but also that "the offers . . . are to fully and finally compromise a

claim in dispute." A true and correct copy of Stephanie's email of April 27, 2023 is

attached as Ex. 26.

38.    On May 4, 2023, USAA apparently assigned yet another new adjuster

to the claim, "Steven". Steven wrote two letters, each updating the offer for Don

and Susan respectively. In his letters, he acknowledged the stackability of

coverages and restated USAA's position that "USAA's pro rata percentage is

17%" – a calculation which USAA has never satisfactorily explained, but which

aligns exactly with the ratio supplied by Cincinnati. In his May 4, 2023 letters,

"Steven" updated USAA's offer for Don to $15,913, an increase of $669. He updated USAA's offer for Susan to $17,673, an increase of $2,621. USAA issued UIM advances of $9,208 to Don and $10,788 to Susan. True and correct copies of these letters are attached as Exs. 27 and 28 respectively.

39.    On May 17, 2023, Don's and Susan's counsel wrote to USAA, again requesting the tender of all underinsured motorist coverage amounts it believed it owed to Don and Susan. A true and correct copy of the letter to Steven is attached as Ex. 29.

40.    On May 19th, 2023, Steven from USAA wrote to Don's and Susan's counsel stating purported calculations of damages for the claims, and denying USAA had an obligation to pay underinsured motorist coverage (other than *Ridley*) unless and until settlement with the insureds. He likewise denied that the value of the claims warranted policy limits payments. True and correct copies of his letters regarding Don's claim and Susan's claim are attached as Exs. 30 and 31 respectively.

41.    Since May 19, 2023, USAA has advanced nothing and has made no further settlement offers.

## FIRST CAUSE OF ACTION
### (Cincinnati's violation of Mont. Code Ann. § 33-18-232)

42.    Plaintiffs reallege the other allegations of this Complaint as if fully set forth herein.

43.    Mont. Code Ann. § 33-18-232(1) requires an insurer to pay or deny a claim within 30 days after submission of proof of loss unless the insurer makes a reasonable request for additional information in order to evaluate the claim. If an insurer makes a reasonable request for additional information, the insurer is required to pay or deny the claim within 60 days of receiving proof of loss.

44.    With respect to Cincinnati, it received proof of loss for each of the Plaintiffs' claims on or about March 16, 2023. It requested additional information in the form of Mr. Empey's automobile insurance information thereafter. It made no other requests. Even assuming its one request was reasonable, Cincinnati violated Mont. Code Ann. § 33-18-232 by refusing to pay its insureds the reasonable value of the claims, or to pay them within the statutory time periods.

45.    Pursuant to Mont. Code Ann. § 33-18-232(2), the insurer is liable to pay the reasonable value of each claim plus annual interest of 10% calculated from the date on which the claim was due.

## SECOND CAUSE OF ACTION
### (USAA's violation of Mont. Code Ann. § 33-18-232)

46.    Plaintiffs reallege the other allegations of this Complaint as if fully set forth herein.

47.    Mont. Code Ann. § 33-18-232(1) requires an insurer to pay or deny a claim within 30 days after submission of proof of loss unless the insurer makes a reasonable request for additional information in order to evaluate the claim. If an insurer makes a reasonable request for additional information, the insurer is required to pay or deny the claim within 60 days of receiving proof of loss.

48.    With respect to USAA, it received proof of loss for each of the Plaintiffs' claims on or about March 13, 2023. It requested no additional information. It made no other requests. USAA violated Mont. Code Ann. § 33-18-232 by refusing to pay its insureds the reasonable value of the claims, or to pay them within the statutory time periods.

49.    Pursuant to Mont. Code Ann. § 33-18-232(2), the insurer is liable to pay the reasonable value of each claim plus annual interest of 10% calculated from the date on which the claim was due.

## THIRD CAUSE OF ACTION
### (Cincinnati's violation of Mont. Code Ann. § 33-18-201)

50.    Plaintiffs reallege the other allegations of this Complaint as if fully set forth herein.

51.     Montana law prohibits insurers from engaging in unfair claims practices. Prohibited practices are listed at Mont. Code Ann. § 33-18-201 and include the following:

> a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> c. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> d. Failing to approve or deny coverage of claims within a reasonable time after proof of loss statements have been submitted; and
>
> e. Neglecting to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

52.     By its actions outlined above, and likely additional actions which will become apparent during discovery, Cincinnati engaged in conduct prohibited by § 33-18-201.

53.     Cincinnati engaged in a scheme to unreasonably delay payment of Don's and Susan's claims, and to leverage them into accepting less than the true value of their claims. To this day, Cincinnati has neglected to attempt in good faith to effectuate prompt, fair, and equitable settlements of their claims, despite the fact liability is reasonably clear. It has neither made a settlement offer nor advanced

money reflecting the true value of the damages suffered by Don and Susan.

Further, it has ceased communication about the claim.

54.    Cincinnati's conduct is actionable under Mont. Code Ann. § 33-18-242(5). Cincinnati is liable to pay the full value of Don's and Susan's claims under the underinsured motorist coverage provisions of the policies it issued. It is further obligated to pay all damages resulting from its conduct including the lost time value of funds.

## FOURTH CAUSE OF ACTION
## (USAA's violation of Mont. Code Ann. § 33-18-201)

55.    Plaintiffs reallege the other allegations of this Complaint as if fully set forth herein.

56.    Montana law prohibits insurers from engaging in unfair claims practices. Prohibited practices are listed at Mont. Code Ann. § 33-18-201 and include the following:

a.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

b.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

d. Failing to approve or deny coverage of claims within a reasonable time after proof of loss statements have been submitted; and

e. Neglecting to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

57.     By its actions outlined above, and likely additional actions which will become apparent during discovery, USAA engaged in conduct prohibited by § 33-18-201 as described above.

58.     USAA engaged in a scheme to unreasonably delay payment of Don's and Susan's claims, and to leverage them into accepting less than the true value of their claims. To this day, USAA has neglected to attempt in good faith to effectuate prompt, fair and equitable settlements of their claims, despite the fact liability is reasonably clear. It has neither made a settlement offer nor advanced money reflecting the true value of the damages suffered by Don and Susan. Further, it has ceased communicating about the claims.

59.     USAA's conduct is actionable under § 33-18-242(5). USAA is liable to pay the full value of Don's and Susan's claims under the underinsured motorist coverage provisions of the policy it issued. It is further obligated to pay all damages resulting from its conduct including the lost time value of funds.

## FIFTH CAUSE OF ACTION
### (Breach of Contract and Recovery of *Mlekush* Attorney Fees award against each Defendant)

60.    Plaintiffs reallege each of the other allegations of the Complaint as if fully set forth herein.

61.    By the actions outlined above, each Defendant has failed to pay the full amount of underinsured motorist benefits reasonably owed to each insured, Don and Susan.

62.    Each Defendant's last offers to Don and Susan are less than the amounts to which they are reasonably entitled under the respective underinsured coverages of each insurance policy.

63.    Each Defendant has breached its insurance policy by neither advancing nor offering in settlement sums which reasonably reflect the value of Don's or Susan's underinsured motorist coverage claims.

64.    Pursuant to *Mlekush v. Farmers Insurance Exchange*, 2017 MT 256, 389 Mont. 99, 404 P.3d 704, Don and Susan are entitled to a jury determination of the value of each of their claims, and to recover their attorney's fees and costs incurred to obtain the full benefit of their underinsured motorist coverage from each Defendant.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.    For a determination of the full value of their respective underinsured motorist coverage claims;

2.    For an award of all damages authorized by Mont. Code Ann. § 33-18-232(2);

3.    For an award of damages against each Defendant representing the unpaid amount of the underinsured motorist benefits owed by said Defendant to each Plaintiff;

4.    For an award against each Defendant representing the consequential damages resulting from its failure to pay the reasonable value of each Plaintiff's claim;

5.    For an award of attorney's fees and costs pursuant to *Mlekush v. Farmers Insurance Exchange* 2017 MT 256, 389 Mont. 99, 404 P.3d 704; and

6.    Such further and other relief as the Court may deem just and appropriate.

DATED this 5ᵗʰ day of December, 2023.

REEP, BELL & JASPER, P.C.

By: _____
Robert T. Bell

COMPLAINT AND DEMAND FOR JURY TRIAL                                    PAGE 22.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED this _5th_ day of December, 2023.

REEP, BELL & JASPER, P.C.

By: _____
Robert T. Bell